UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

MARY ANN ELLIS,

        Plaintiff,

v.                                                                                    No. 5:18-cv-1219-JKP

BLUEBONNET VENISON FARMS, INC.,
and BLUEBONNET FOODS, L.P.,
d/b/a GOODHEART BRAND
SPECIALTY MEATS

        Defendants.

## MEMORANDUM OPINION AND ORDER

This matter came before the Court on October 25, 2019, for hearing upon *Defendants' Rule 12(b)(6) Motion to Dismiss Plaintiff's Second Amended Complaint for Failure to State a Claim* (ECF No. 23). Attorneys Kelly Elizabeth Preston and Tiffany Cox Stacy appeared on behalf of Defendants. Plaintiff Mary Ann Ellis appeared *pro se*. Having considered Defendants' Motion, the pleadings on record, and the arguments of the parties, the Court grants the motion.

**I. Basis of suit and grounds for dismissal**

Plaintiff Mary Ann Ellis ("Ellis") was employed by Bluebonnet Foods, L.P., d/b/a GoodHeart Brand Specialty Foods ("GoodHeart") from January 6, 2017 until March 6, 2018 as a door monitor.[1] Ellis is African American and was over 40 years of age when hired. Ellis claims GoodHeart retaliated and discriminated against her based on her race, color, national origin, and age in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and the Age Discrimination in Employment Act ("ADEA"). Defendants move to dismiss this action with prejudice. Defendants argue Ellis failed to

---

[1] Defendants note Bluebonnet Foods, L.P., d/b/a Goodheart Brand Specialty Foods was Plaintiff's employer. Bluebonnet Venison Farms, Inc., is its general partner of Bluebonnet Foods, L.P. ECF No. 23 at 1 n.1.

seek leave of Court to allege retaliation, a claim which is nonetheless untimely. Defendants further assert Ellis's discrimination claims should be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim because Ellis has not alleged she was qualified to perform her job at the time of her termination. Ellis opposes dismissal, asserting in oral argument that she was always able to do her job.

**II. Legal Standard**

When presented with a motion to dismiss under Rule 12(b)(6), a court generally "must assess whether the complaint contains sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face[.]" *United States v. Bollinger Shipyards Inc.*, 775 F.3d 255, 257 (5th Cir. 2014) (internal citations and quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). Although a plaintiff's factual allegations need not establish the defendant is probably liable, they must establish more than a "sheer possibility" a defendant has acted unlawfully. *Id*. Determining plausibility is a "context-specific task," and must be performed in light of a court's "judicial experience and common sense." *Id*. at 679. Where a plaintiff's factual allegations do not provide enough information to "nudge a claim across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570; *accord Iqbal*, 556 U.S. at 678.

In assessing a motion to dismiss under Rule 12(b)(6), the court's review is generally limited to the complaint and any documents attached to the motion to dismiss referred to in the complaint and central to the plaintiff's claims. *Tellabs Inc. v. Makor Issues & Rights Ltd.*, 551 U.S. 308, 322 (2007); *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007). When reviewing the complaint, the "court accepts all well-pleaded facts as true, viewing them in the light

most favorable to the plaintiff." *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (internal quotation marks omitted) (quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999)).

**III. Plaintiff's Allegations**

Ellis's Second Amended Complaint alleges the following. Ellis was hired by GoodHeart on January 6, 2017. ECF No. 20 at 3. At the time of hire, Ellis advised the Human Resources ("HR") Director she had a previous back injury and could not do heavy lifting. *Id.* at ¶ 12(b). The HR Director assured Ellis her job did not require heavy lifting. *Id.* Ellis alleges on or about the second week of her employment, two female coworkers "verbally abused" her in front of other coworkers, complaining Ellis was issuing too many personal protective equipment safety supplies. *Id.* at ¶ 12(c). Ellis alleges she reported this encounter to HR. *Id.* Ellis alleges she also explained to HR she had observed another employee hiding safety supplies. *Id.*

Ellis alleges she told the nightshift supervisor in April 2017, she was running out of safety supplies. *Id.* at ¶ 12(d). Ellis alleges she told HR in April 2017, two co-workers called her a "Black Ass Bitch" on many occasions and in front of other co-workers. *Id.* at 4 ¶ 12(e). Ellis alleges in May 2017, she was "repeatedly moved back and forth from one side of the plant to the other with no explanation as to why." *Id.* at ¶ 12(f). In response, Ellis inquired with HR as to whether her move was racially motivated. *Id.* HR then "attempted" to assure Ellis her treatment—including the harassment and constant movement—was not racially motivated. *Id.* at 4 ¶¶ 12(f)(g).

On June 8, 2017, Ellis received a chemical burn to her left hand while pouring an unidentified chemical as ordered. *Id.* at ¶ 12(h). Ellis reported the injury to the night shift supervisor, and, on June 20, 2017, Ellis was sent to the Texas Med Clinic. Ellis alleges she continues to receive treatment for the injury. *Id.* at ¶¶ 12(h)(i). On September 8, 2017, Ellis was informed her job requirements had changed. *Id.* at 4 ¶ 12(j). On or about September 10, 2017, Ellis sent HR a memo

3

citing "clock in and out time" for August and September.; "door monitor requirements;" "file formal complaints." *Id*. at ¶ 12(k). Ellis alleges she submitted "Payroll Inquiry" forms, on September 13, 20, and 29, 2017, the "only forms available to register discrimination complaints," in which she reported she was being subjected to discrimination and a hostile work environment. *Id*. at 4-5 ¶¶ 12(l)(m)(n). Ellis alleges she did not receive any responses and "Defendants took no corrective action." *Id*. at 5 ¶ 12(n).

Ellis alleges on or about October 12, 2017, she filed a memo with HR citing harassment, false accusations, and racial discrimination. *Id*. at 5 ¶ 12(p). Ellis alleges on or about October 17, 2017, she was written up for failing to perform her job duties and failing to follow direction. *Id*. at ¶ 12(q). Ellis alleges she was "told to execute the document, which she refused" and, she was not provided a copy. *Id*. Ellis was told by HR not to return to work unless she obtained a full medical release. *Id*. at ¶ 12(r). Ellis alleges she was never asked to sign a statement requesting Leave without Pay. Instead, Ellis was told to call in on a specific phone number and at a specific time to report in. *Id*. at 5 ¶ 12(q)(r). Ellis alleges on or about November 2, 2017, she received a letter from HR with instructions to obtain a Functional Capacity Evaluation ("FCE"). *Id*. at ¶ 12(s).

On or about January 8, 2018, Ellis provided the FCE to GoodHeart, which explained Ellis "does not meet the physical demands of a Door Monitor as outlined by her employer" and recommended Ellis "return to modified-duty work activity" with the restrictions outlined in the report. *Id*. at ¶ 12(t). *See also* 20-1 at 9. On or about March 6, 2018, GoodHeart informed Ellis via letter it had reviewed her FCE and was unable to accommodate her without undue hardship. *Id*. at 5-6 ¶ 12(u). The letter included a severance agreement, which informed Ellis her employment would cease as of March 5, 2018. *Id*. *See also* ECF No. 20-1 at 21-28.

**IV. Discussion**

**A. Retaliation**

Under the ADEA and Title VII, a plaintiff must file a civil action within ninety days of receiving a right-to-sue letter from the EEOC. *Menson v. City of Baton Rouge*, 539 F. App'x 433, 434 (5th Cir. 2013) (citing *St. Louis v. Tex. Worker's Comp. Comm'n*, 65 F.3d 43, 45, 47 (5th Cir. 1995) (ADEA); *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 379 (5th Cir. 2002) (Title VII)). "This requirement to file a lawsuit within the ninety-day limitation period is strictly construed." *Taylor*, 296 F.3d at 379. Strict adherence to this ninety-day statute of limitations is required even for *pro se* litigants. *See, e.g., Washington v. City of Gulfport, Miss.*, 351 Fed. App'x 916, 917-18 (5th Cir. 2009); *Bowers v. Potter*, 113 F. App'x 610, 612-13 (5th Cir. 2004). "[C]ommencement of the ninety-day period begins to run on the day that notice is received at the address supplied to the EEOC by the claimant." *Bowers*, 113 Fed. App'x at 612. When the date of receipt of the letter is unknown or is in dispute, courts presume the letter was received within three to seven days after it was mailed, unless otherwise shown. *Id.* at 612-13; *Taylor*, 296 F.3d at 379-80.

Ellis's Notice of Suit Rights states it was mailed August 22, 2018. ECF No. 20-1 at 1. Applying the presumption of seven days delivery time, the notice would have been received on August 29, 2018. Ninety days after August 29, 2018, is November 27, 2018. Ellis timely filed her original complaint on November 23, 2018. Ellis filed her Second Amended Complaint on June 20, 2019, well after the ninety-day limitation period. Therefore, any claim raised for the first time in the amended complaint is untimely unless the claim meets the requirements of the relation back doctrine.

An amended complaint may relate back when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). The focus of the inquiry is on the underlying facts the cause of action is based upon. *Johnson v. Crown Enters., Inc.*, 398 F.3d 339, 342 (5th Cir. 2005).

5

Ellis's original and first amended complaints allege four counts of discrimination based on age, gender, national origin, and race. ECF Nos. 1 at 6-7; 2 at 6-7. Ellis's original and first amended complaints do not allege a claim for retaliation. With respect to retaliatory conduct, Ellis's original and first amended complaint allege the following: (1) in January, 2017, Ellis complained to HR of verbal abuse by coworkers and supervisors; (2) in May, 2017, Ellis was "moved back and forth from one side of the plant to the other with no explanation as to why;" (3) Ellis "asked HR personnel if Ellis's being moved was racially motivated as she was the only black person being constantly moved;" and (4) HR "attempted to convince the Plaintiff that her treatment, including other employee's harassment and constantly being moved was not racially motivated." *See* ECF Nos. 1 at 4; 2 at 4.

Ellis's second amended complaint specifically alleges a claim of retaliation. ECF No. 20 at 9. In support of this claim, Ellis alleges she complained to HR "in writing" including "at least five complaints" about "derogatory racial epithets hurled at Plaintiff by supervisors" and "at least five complaints of discrimination" based on coworker behavior, which caused "Plaintiff's job performance to suffer." *Id*. In contrast to her original and first amended complaints—in which Ellis alleges Defendants "discriminated against the Plaintiff by wrongfully terminating the Plaintiff"— Ellis's second amended complaint alleges Ellis "was ultimately terminated due to her engaging in protected activity." *See* ECF Nos. 1 at 6; 2 at 6; 20 at 9.

"The purpose of [Rule 15] is accomplished if the initial complaint gives the defendant fair notice that litigation is arising out of a specific factual situation." *Johnson*, 398 F.3d at 342 (internal quotation marks omitted). Here, even though a few facts might suggest retaliation, Ellis's singular focus on discriminatory conduct in the original and first amended complaints did not give Defendants fair notice of a retaliation claim. Consequently, the retaliation claim in the amended complaint does not relate back to the date of either the original or first amended complaint.

6

Even if the Court were to find Ellis's Second Amended Complaint asserted a claim that arose out of conduct Ellis attempted to set out in the original pleading, the Court directed Ellis she must seek leave of Court prior to filing an amendment with "any new claims, including a retaliation claim." ECF No. 19 at 1 ¶ 1.[2] Ellis did not seek leave of Court prior to raising the retaliation claim. Failure to comply with a Court order serves as an independent basis for dismissal. *See* Fed. R. Civ. P. 41(b). Accordingly, Ellis's retaliation claim is dismissed.

**B. Discrimination**

To establish a *prima facie* case of discrimination, Ellis must plausibly allege that she is (1) a member of a protected class; (2) she is qualified for the position held; (3) she was subject to an adverse employment action; and (4) she was replaced by someone outside of her protected class or that others similarly situated were treated more favorably. *Okoye v. Uni. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512-13 (5th Cir. 2001).[3] Ellis's Second Amended Complaint fails to allege Ellis was qualified for the position she held. Rather, Ellis's Second Amended Complaint and attached documents show she was not qualified to perform the physical requirements of her job and GoodHeart terminated her employment for this reason. *See* Job Description, Functional Capacity Evaluation, and termination letter attached to Ellis's Second Amended Complaint, ECF No. 20-1 at 4-5, 7-20, 21. Specifically, the FCE shows Ellis is physically unable to execute seven of fifteen essential duties. *Id*. at 9.

---

[2] Order signed June 5, 2019, by the Honorable Richard B. Farrer, United States Magistrate Judge.

[3] *See also Gilbert v. Brookshire Grocery Co.*, 354 F. App'x 953, 954 (5th Cir. 2009) ("To establish a prima facie case of racial discrimination in employment under Title VII, an employee must demonstrate that (1) he is a member of a protected class, (2) he was qualified for the position at issue, (3) he was subject to an adverse employment action, and (4) others similarly situated, but not in the protected class, were treated more favorably.") (emphasis added); *Chester v. DirecTV, L.L.C.*, 683 F. App'x 344, 346-47 (5th Cir. 2017) ("To establish a prima facie case of age discrimination under the ADEA, a plaintiff must show that he was: (1) terminated; (2) qualified for the position from which he was terminated; (3) within the protected age group at the time of termination; and (4) replaced by someone younger or outside the protected class, or otherwise discharged because of his age.").

Because Ellis has failed to plausibly allege she was qualified for the position, this action is subject to dismissal. *See Okoye*, 245 F.3d at 512-13. Dismissal with prejudice is warranted because Ellis has previously been granted leave to amend after being apprised of the deficiencies in her pleading. Further, based on the evidence submitted by Ellis, including the FCE, which concludes Ellis "does not meet the physical demands of a Door Monitor as outlined by her employer," the court finds any further amendment would be futile. ECF No. 20-1 at 9. *See Rojas, et al. v. Elbit Sys. of Am., LLC, et al.*, Case 5:17-cv-00307-DAE, ECF No. 18, (W.D. Tex. Aug. 10, 2017).

**V. Conclusion**

For the reasons set forth above, the Court GRANTS Defendants' Rule 12(b)(6) Motion to Dismiss Plaintiff's Second Amended Complaint for Failure to State a Claim (ECF No. 23). This action is DISMISSED with prejudice.

It is so ORDERED.

SIGNED this 29th day of October 2019.

_____
JASON PULLIAM
UNITED STATES DISTRICT JUDGE